**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CAVALIER TELEPHONE, LLC,
                    *Plaintiff-Appellee,*

v.

VIRGINIA ELECTRIC AND POWER
COMPANY, d/b/a Dominion Virginia
Power,
                    *Defendant-Appellant.*

No. 01-2135

CAVALIER TELEPHONE, LLC,
                    *Plaintiff-Appellant,*

v.

VIRGINIA ELECTRIC AND POWER
COMPANY, d/b/a Dominion Virginia
Power,
                    *Defendant-Appellee.*

No. 01-2192

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-01-106-3)

Argued: May 7, 2002

Decided: August 30, 2002

Before WILLIAMS, TRAXLER, and GREGORY, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Traxler and Judge Gregory joined.

**COUNSEL**

**ARGUED:** Thomas George Hungar, GIBSON, DUNN & CRUT-CHER, L.L.P., Washington, D.C., for Appellant. Stephen Thomas Perkins, CAVALIER TELEPHONE, L.L.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Curtis E. Gannon, GIBSON, DUNN & CRUTCHER, L.L.P., Washington, D.C.; Stephen A. Northup, Matthew B. Kirsner, TROUTMAN, SANDERS, MAYS & VALENTINE, L.L.P., Richmond, Virginia; John D. Sharer, Law Department, DOMINION RESOURCES SERVICES, INC., Richmond, Virginia, for Appellant. Donald F. Lynch, III, CAVALIER TELEPHONE, L.L.C., Richmond, Virginia, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Virginia Electric and Power Company (Virginia Power) appeals the district court's entry of a preliminary injunction enforcing an order of the Cable Services Bureau (CSB) issued pursuant to delegated authority.[1] Virginia Power contends that: (1) the CSB order is not eligible

---

[1]The Federal Communications Commission, as provided under 47 U.S.C.A. § 155(c), delegated authority to the CSB to administer and enforce rules and policies regarding "[a]ccess to poles, ducts, conduits and right-of-way and the rates, terms and conditions for pole attachments." 47 C.F.R. §§ 0.101(a)(2), 0.321 (2001) (repealed 2002). Effective March 25, 2002, the Commission transferred responsibility for resolving pole attachment complaints from the former CSB to the Enforcement Bureau. *See* 47 C.F.R. § 0.111(a)(12) (2002). Specifically, the Market Disputes Resolution Division (MDRD) of the Enforcement Bureau now handles all pole attachment complaints. Press Release, Federal Communications Commission, FCC Enforcement Bureau Announces Reorganization Structure (March 8, 2002) (*http://www.fcc.gov*/eb/News_Releases /DOC-220250A1.html). In the interest of clarity, we will refer to the Commission's authority under the Pole Attachment Act and accompanying regulations without regard to whether such authority has been delegated unless such delegation is directly relevant to this case.

for judicial enforcement because Virginia Power has filed an application for review by the Federal Communications Commission (the Commission) and because Cavalier Telephone, LLC (Cavalier) failed to exhaust an available administrative remedy; (2) the district court erred by granting relief beyond the scope of the CSB order; and (3) the district court failed to satisfy Federal Rules of Civil Procedure 52(a) and 65(d). On cross-appeal, Cavalier asserts that the district court erred by imposing a limitation on Cavalier's use of alternative methods to attach its equipment to Virginia Power's utility poles that is not found in the CSB order. We do not reach the merits of this appeal because Cavalier failed to exhaust an available administrative remedy. We therefore reverse and remand with instructions to dismiss Cavalier's complaint.

## I.

Cavalier is an independent, facilities-based competitive local exchange carrier providing telecommunications services to residential and business customers throughout the Richmond, Tidewater, and Northern Virginia areas. Virginia Power is an investor-owned electric utility delivering power to homes and businesses through a network of approximately one million poles. The Pole Attachment Act, as added to the Communications Act of 1934 (the Communications Act) and as amended by the Telecommunication Act of 1996, 47 U.S.C.A. § 224 (West 2001), requires utilities such as Virginia Power to provide "any telecommunications carrier with nondiscriminatory access to any pole, duct, conduit, or right-of-way owned or controlled by it."[2] 47 U.S.C.A. § 224(f).

On November 30, 1999, Cavalier filed a complaint with the Commission alleging that Virginia Power denied Cavalier access to its poles in violation of the Pole Attachment Act. Virginia Power filed

---

[2]Under the Pole Attachment Act, "[t]he term 'utility' means any person who is a local exchange carrier or an electric, gas, water, steam, or other public utility, and who owns or controls poles, ducts, conduits, or rights-of-way used, in whole or in part, for any wire communications." 47 U.S.C.A. § 224(a)(1). The term "utility," however, "does not include any railroad, any person who is cooperatively organized, or any person owned by the Federal Government or any State." *Id.*

an opposition to Cavalier's complaint on January 6, 2000. The CSB, pursuant to delegated authority, considered the parties' submissions and on June 7, 2000, the CSB released an order "grant[ing] [Cavalier's] Complaint in part" and requesting further information. (J.A. at 45-46.) Specifically, the CSB required Virginia Power to, among other things, expedite processing of permits that had been pending more than 45 days, not discriminate against Cavalier in the use of extension arms or boxing,[3] and to coordinate make-ready work[4] of other attachers and perform make-ready work on its own facilities in a timely manner. On September 18, 2000, the CSB released a follow-up order terminating Virginia Power's annual pole attachment rate of $37.00 per pole, substituting a rate of $5.12, ordering Virginia Power to compensate Cavalier for previous overcharges, and ordering both parties to negotiate in good faith a just and reasonable rate for 2001. *Cavalier Telephone, LLC v. Va. Elec. & Power Co.*, 15 FCC Rcd. 17,962, 17,964 (2000). On July 7, 2000, Virginia Power filed an application for review of the CSB's order with the Commission, as provided under 47 U.S.C.A. § 155(c)(4). At oral argument, Virginia Power stated that the Commission had not yet acted on this application for review. On February 20, 2001, Cavalier filed a complaint in the United States District Court for the Eastern District of Virginia alleging that Virginia Power violated the June 7, 2000 order by continuing to deny it pole access. Cavalier simultaneously filed a motion in the district court for a temporary restraining order and a preliminary injunction. On February 23, 2001, the district court issued a temporary restraining order against Virginia Power and subsequently granted Cavalier's Motion for Preliminary Injunction.[5] The district

---

[3]The term "boxing" refers to the practice of installing communications lines at approximately the same height on both sides of a pole.

[4]"Make-ready work" refers to the preparations necessary to make a pole ready for attaching equipment. Such preparations typically involve rearranging existing attachments to make room for the new attachment.

[5]Specifically, the district court (1) enjoined Virginia Power from canceling Cavalier's permits to attach telecommunications equipment to Virginia Power's poles; (2) ordered Virginia Power to reinstate pole attachment permits canceled since the CSB order was issued; (3) enjoined Virginia Power from revoking permits previously issued to Cavalier; (4) ordered Virginia Power to grant or deny access within 45 days of receiving Cavalier's applications; (5) ordered Virginia Power to

court determined that the CSB order became effective and enforceable when issued and exercised jurisdiction pursuant to 47 U.S.C.A. § 401(b) (West 2001).[6] The district court then stayed the matter, but not the preliminary injunction, pending final resolution of Virginia Power's application for review of the CSB order by the Commission.

---

allow Cavalier to attach immediately where permit applications had been pending more than 45 days; (6) ordered Virginia Power to permit Cavalier to resume work immediately on its pole attachments; (7) ordered Virginia Power to permit Cavalier to use qualified workers who are not employed by Virginia Power to perform Cavalier's make-ready work; (8) ordered Virginia Power to allow use of extension arms where pole replacement is the only other option; (9) ordered both Cavalier and Virginia Power to negotiate in good faith and fashion a reasonable accommodation for the payment of make-ready work costs for future permits; and (10) ordered Virginia Power to adhere to all other terms of the CSB order.

[6]Virginia Power contends that because the CSB order is being reviewed by the Commission, it is not enforceable under § 401(b) and thus the district court lacked subject matter jurisdiction to hear this case. *See* 47 U.S.C.A. § 155(c)(3) (West 2001) ("Any order . . . made pursuant to [delegation of authority under § 155], unless reviewed [by the Commission] as provided in [§ 155(c)(4)], shall have the same force and effect, and shall be made, evidenced, and enforced in the same manner, as orders . . . of the Commission."); 47 U.S.C.A. § 401(b) ("If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, . . . any party injured thereby . . . may apply to the appropriate district court of the United States for enforcement of such order."). It is firmly established, however, "that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. ___, 122 S.Ct. 1753, 1758 (2002) (internal quotation marks and citations omitted); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (explaining that "if the right of the petitioners to recover under their complaint will be sustained if the . . . laws of the United States are given one construction and will be defeated if they are given another", the district court has subject matter jurisdiction). Virginia Power's assertion that the CSB order is not "an order of the Commission," therefore, does not implicate subject matter jurisdiction.

Virginia Power filed a timely notice of appeal and Cavalier filed a timely cross-appeal. This court has jurisdiction pursuant to 28 U.S.C.A. § 1292(a)(1) (West 1993 & Supp. 2002), which permits appeals of interlocutory orders granting or continuing injunctions.

II.

The Pole Attachment Act requires the Commission to "regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable" unless such matters are regulated by a state, an exception not applicable in this case. 47 U.S.C.A. §§ 224(b)(1), (c)(1). To this end, the Commission is required to "adopt procedures necessary and appropriate to hear and resolve complaints concerning such rates, terms, and conditions." 47 U.S.C.A. § 224(b)(1). Moreover, "[f]or purposes of enforcing any determinations resulting from [these complaint procedures], the Commission shall take such action as it deems appropriate and necessary, including issuing cease and desist orders, as authorized by section 312(b) of this title." *Id.* In response, the Commission promulgated the Pole Attachment Complaint Procedures. 47 C.F.R. §§ 1.1401-1.1418 (2001). These regulations "provide complaint and enforcement procedures to ensure that telecommunications carriers and cable systems operators have nondiscriminatory access to utility poles, ducts, conduits, and rights-of-way on rates, terms, and conditions that are just and reasonable." § 1.1401. Under the regulations, a telecommunications carrier or cable systems operator may file a complaint if it believes that a utility is imposing a rate, term, or condition that is "unjust or unreasonable" or that the utility's denial of access violates 47 U.S.C.A. § 224(f).[7] § 1.1404. The utility is allowed to file a response to the complaint and the complainant may then file a reply to the utility's response. § 1.1407. After the Commission considers the complaint as set out under § 1.1409, it issues an appropriate order. If the respondent fails to obey the Commission's order "the Commission on its own motion or by motion of the complainant may order the respondent to show cause why it should not cease and desist from vio-

---

[7]A utility may deny access only "on a non-discriminatory basis where there is insufficient capacity and for reasons of safety, reliability and generally applicable engineering purposes." 47 U.S.C.A. § 224(f)(2) (footnote omitted).

lating the Commission's order."[8] § 1.1412. "If any person willfully fails to obey any order imposed under [these procedures], . . . the Commission may, in addition to any other remedies . . . impose a forfeiture pursuant to section 503(b) of the Communications Act." § 1.1413.

In addition to the enforcement provisions under the Pole Attachment Act, the Communications Act provides that "[i]f any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for enforcement of such order."[9] 47 U.S.C.A. § 401(b). Thus, section 401(b) creates a private right of action in federal district court for enforcement of any order of the Commission that does not require the payment of money for those injured by another's failure to obey the order. *See, e.g.*, *Alltel Tennessee, Inc. v. Tennessee Pub. Serv. Comm'n*, 913 F.2d 305, 309 (6th Cir. 1990) ("The telephone compa-

---

[8]We refer to this administrative remedy as the Pole Attachment Enforcement Procedure.

[9]Judicial review of an order of the Commission, on the other hand, is only available in the court of appeals pursuant to § 402(a). *Compare* 47 U.S.C.A. § 401 (providing for enforcement of orders of the Commission by the district courts), *with* § 402 (providing for judicial review of orders of the Commission by the court of appeals). *See FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984) (explaining that a district court could not enjoin an order of the Commission because exclusive jurisdiction for judicial review of Commission orders lies in the court of appeals). Virginia Power argues that it is unconstitutional for an Article III court to enforce an order of the Commission under § 401(b) prior to judicial review of the order under § 402(a). We need not address this issue because we conclude that Cavalier must first seek enforcement under the Pole Attachment Complaint Procedures before seeking judicial enforcement in the district court, and if Cavalier is successful in an administrative action, Virginia Power may seek judicial review of the cease-and-desist order under 47 U.S.C.A. § 402(b)(7). *See MediaOne Group, Inc. v. County of Henrico*, 257 F.3d 356, 361 (4th Cir. 2001) ("[C]ourts should avoid deciding constitutional questions unless they are essential to the disposition of a case." (internal quotation marks and citation omitted)).

nies . . . properly sought enforcement of the [Commission's] separations order by injunction pursuant to § 401(b)."); *Hawaiian Tel. Co. v. Pub. Util. Comm'n of Hawaii*, 827 F.2d 1264, 1277 (9th Cir. 1987) (concluding that injunction sought by telephone companies to enforce Commission's order was authorized under § 401(b)). Cavalier, rather than availing itself of the Pole Attachment Enforcement Procedure, brought a § 401(b) enforcement action in district court alleging that it was injured by Virginia Power's failure to obey the June 7, 2000 CSB order. The district court held that Cavalier need not exhaust the administrative remedy. On appeal, Virginia Power argues that the Commission specifically provided the Pole Attachment Enforcement Procedure to enforce such orders. The issue we face, therefore, is whether Cavalier is required to request a cease-and-desist order from the Commission prior to seeking enforcement in federal court under § 401(b).

### III.

Whether Cavalier must exhaust the Pole Attachment Enforcement Procedure before filing an enforcement action in federal court is a legal question and thus subject to de novo review. *NationsBank Corp. v. Herman*, 174 F.3d 424, 428 (4th Cir. 1999). It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbldg. Corp.*, 303 U.S. 41, 50-51 (1938). In other words, "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). When applying the exhaustion doctrine, Congressional intent is of "'paramount importance.'" *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (quoting *Patsy v. Bd. of Regents of Florida*, 457 U.S. 496, 501 (1982)). "Where Congress has intended to require administrative exhaustion . . . courts enforce that requirement unless a party provides grounds for waiving it in a particular case." *NationsBank*, 174 F.3d at 428; *see also Patsy*, 457 U.S. at 501 n.4 ("[E]xhaustion is required where Congress provides that certain administrative remedies shall be exclusive."). "Even where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining

whether application of the doctrine would be consistent with the statutory scheme." *Patsy*, 457 U.S. at 501 n.4. Thus, "courts generally focus on the role Congress has assigned to the relevant federal agency, and tailor the exhaustion rule to fit the particular administrative scheme created by Congress." *Id.* As a result, the exhaustion requirement serves to "allow an agency the opportunity to use its discretion and expertise to resolve a dispute without premature judicial intervention and to allow the courts to have benefit of an agency's talents through a fully developed administrative record."[10] *Thetford Props. IV Ltd. v. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 448 (4th Cir. 1990); *McKart v. United States*, 395 U.S. 185, 194 (1969) ("And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or apply that expertise.").

These institutional interests, however, must be balanced against the "virtually unflagging obligation of the federal courts" to exercise their jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). Thus "[i]n determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. "Application of this balancing principle is intensely practical . . . because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* (internal citations omitted); 2

---

[10]We note that the doctrine of exhaustion of administrative remedies is analytically analogous to the doctrine of primary jurisdiction. *See* 2 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 14.1, at 271 (3d ed. 1994); *Alltel*, 913 F.2d at 309 ("The principal reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions."). The Supreme Court, however, has clarified that primary jurisdiction is "applicable to claims *properly cognizable in court* that contain some issue within the special competence of an administrative agency." *Reiter*, 507 U.S. at 268 (emphasis added). Because the issue we face is whether Cavalier must seek relief available from an administrative agency before "proceeding to the courts," the doctrine of exhaustion of administrative remedies is applicable. *Id.* at 269.

Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 15.2, at 307 (3d ed. 1994) ("Exhaustion is usually required unless considerations of individual justice, efficiency, or wise judicial administration support the need for judicial [involvement] in the absence of exhaustion."). The individual's interests weigh heavily in the following three circumstances: (1) when requiring exhaustion may prejudice subsequent court action; (2) when an agency's remedy may be inadequate; and (3) when the "administrative agency body is shown to be biased or to have otherwise predetermined the issues before it." *Volvo GM Heavy Truck Corp. v. Dep't of Labor*, 118 F.3d 205, 211 n.8 (4th Cir. 1997) (citing *McCarthy*, 503 U.S. at 147-48).

With these principles in mind, we turn to whether Cavalier must exhaust the Pole Attachment Enforcement Procedure before seeking judicial enforcement of the CSB order under § 401(b). Because there is no explicit requirement that Cavalier avail itself of the Pole Attachment Enforcement Procedure before proceeding to court, we must weigh the institutional interests with regard to requiring exhaustion against Cavalier's interest in judicial enforcement, while being mindful of the scheme Congress established in the Pole Attachment Act.

The institutional interests weigh heavily in favor of exhaustion. The role of the Commission is to "execute and enforce" the Communications Act. 47 U.S.C.A. § 151. Under the Pole Attachment Act, the Commission is authorized to "regulate the rates, terms, and conditions for pole attachments" and "adopt procedures necessary and appropriate to hear and resolve complaints concerning such rates, terms, and conditions." 47 U.S.C.A. § 224(b)(1). Moreover, Congress gave the Commission discretion to enforce determinations under the Pole Attachment Complaint Procedures "as it deems appropriate and necessary." 47 U.S.C.A. § 244(b)(1); S. Rep. 95-580, at 21 (1977), *reprinted in* 1978 U.S.C.C.A.N. 109, 129 ("The bill as reported affords the Commission discretion to select the regulatory tools necessary to carry out its new responsibilities, consistent with the simple complaint procedure specified in the bill, as reported."). Legislative history further reveals that Congress intended to limit the enforcement mechanisms available under the Pole Attachment Complaint Procedures to create a "simple and expeditious" process. S. Rep. 95-580, at 21. Permitting a complainant to bypass the Pole Attachment Enforcement Procedure would be inconsistent with the goal of a sim-

ple and expeditious process. Such judicial interference would make the process of resolving pole attachment disputes more burdensome, cause delay, and could weaken the effectiveness of the Pole Attachment Complaint Procedures. *McKart*, 395 U.S. at 195 ("[I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.").

Furthermore, requiring exhaustion of the Pole Attachment Enforcement Procedure would give the Commission an opportunity to apply its expertise and experience to address whether the CSB order has been violated. For example, the CSB order prohibits Virginia Power from applying discriminatory standards forbidding Cavalier from using extension arms or boxing as methods of attachment. The Commission's expertise gives it an advantage in determining whether Virginia Power's prohibition of boxing is justified by safety and capacity concerns or is merely a means of discriminating against Cavalier in violation of the CSB order. Requiring exhaustion of the Pole Attachment Enforcement Procedure may therefore benefit any subsequent judicial enforcement because all cease-and-desist orders must "include a statement of the findings of the Commission and the grounds and reasons therefore." 47 U.S.C.A. § 312(c); *see also Thetford*, 907 F.2d at 448 (recognizing that a fully developed administrative record is a readily apparent benefit of exhaustion requirements). Such development of the record would be beneficial in this case, for example, because as the district court pointed out, the CSB order leaves "much room for interpretation and continuing conflict." (J.A. at 1524.) Of course, subsequent court action may not be necessary because Cavalier's rights may be properly vindicated under the Pole Attachment Enforcement Procedure. *Cf. McKart*, 395 U.S. at 195. Allowing the complaint and enforcement procedures under the Pole Attachment Act to go forward without interruption allows the Commission an opportunity to use its full expertise to resolve pole attachment disputes and is thus more efficient than permitting the parties to seek aid from the courts at various intermediate stages. *Id.* at 194. Moreover, requiring a complainant to exhaust the Pole Attachment Enforcement Procedure is clearly consistent with the relevant statutory scheme.

Turning to Cavalier's interest in judicial enforcement, it is clear that initially seeking enforcement of the CSB order through a cease-

and-desist order issued by the Commission would not place a heavy burden on Cavalier. Under the Pole Attachment Enforcement Procedure, Cavalier must file a motion with the Commission alleging Virginia Power's failure to obey the CSB order and requesting that the Commission order Virginia Power to show cause why it should not cease and desist from violating the CSB order. 47 C.F.R. § 1.1412. If the Commission grants the motion and orders Virginia Power to show cause, Virginia Power would have at least 30 days to prepare for a hearing on the issue of its failure to obey the CSB order. 47 U.S.C.A. § 312(c). "If after hearing, or a waiver thereof, the Commission determines that . . . a cease and desist order should issue, it shall issue such order . . ." *Id.* This procedure poses no undue hardships for Cavalier and the remedy is precisely what Cavalier seeks, that is, an order requiring Virginia Power to adhere to the CSB order. There is no indication, therefore, that the Pole Attachment Enforcement Procedure is inadequate nor that pursuit of such a remedy would cause undue prejudice in subsequent court proceedings. Due to the discretionary nature of the Commission's enforcement powers under the Pole Attachment Act and the expertise of the Commission, combined with the minimal burden placed on Cavalier, we conclude that the Commission should be given the first opportunity to enforce the CSB order.

IV.

In summary, we conclude that Cavalier failed to exhaust the Pole Attachment Enforcement Procedure at 47 C.F.R. § 1.1412. We therefore reverse the district court's grant of preliminary injunction and remand with instructions to dismiss Cavalier's complaint.

*REVERSED AND REMANDED WITH INSTRUCTIONS*