UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 00-1680(L)
(CA-00-33-3)

MediaOne Group, Inc., et al.,

Plaintiffs - Appellees,

versus

GTE Intelligent Network Services, Inc., etc.,

Intervenor - Appellant.

O R D E R

The court amends its opinion filed July 11, 2001, as follows:

On page 7, section 2, lines 10-11 -- the name of Theodore W. Ullyot is removed from list of counsel "on brief."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MEDIAONE GROUP, INCORPORATED;
MEDIAONE OF VIRGINIA,
INCORPORATED; AT&T CORPORATION,
<u>Plaintiffs-Appellees,</u>

v.

COUNTY OF HENRICO, VIRGINIA,
<u>Defendant,</u>

BELL ATLANTIC CORPORATION; BELL
ATLANTIC-VIRGINIA, INCORPORATED;
BELL ATLANTIC INTERNET SOLUTIONS,
INCORPORATED,
<u>Intervenors/Defendants,</u>

and

GTE INTELLIGENT NETWORK
SERVICES, INCORPORATED, d/b/a
GTE.net,
<u>Intervenor-Appellant.</u>

VIRGINIA CITIZENS CONSUMER
COUNCIL; CONSUMER FEDERATION OF
AMERICA; CENTER FOR MEDIA
EDUCATION; DISTRICT OF COLUMBIA;
CITY OF TACOMA, WASHINGTON;
MONTGOMERY COUNTY, MARYLAND;
U.S. CONFERENCE OF MAYORS;
NATIONAL LEAGUE OF CITIES;

No. 00-1680

NATIONAL ASSOCIATION OF COUNTIES;
NATIONAL ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; VIRGINIA ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; TEXAS ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; MINNESOTA
ASSOCIATION OF COMMUNITY
TELECOMMUNICATIONS
ADMINISTRATORS; OPENNET
COALITION; HANDS OFF THE
INTERNET; FEDERAL COMMUNICATIONS
COMMISSION; NATIONAL CABLE
TELEVISION ASSOCIATION; VIRGINIA
TELECOMMUNICATIONS ASSOCIATION;
WEST VIRGINIA TELECOMMUNICATIONS
ASSOCIATION; CABLE
TELECOMMUNICATIONS ASSOCIATION OF
MARYLAND, DELAWARE AND THE
DISTRICT OF COLUMBIA,
INCORPORATED; NORTH CAROLINA
CABLE TELECOMMUNICATIONS
ASSOCIATION; SOUTH CAROLINA
TELEVISION ASSOCIATION,
Amici Curiae.

MEDIAONE GROUP, INCORPORATED;
AT&T CORPORATION; MEDIAONE OF
VIRGINIA, INCORPORATED;
Plaintiffs-Appellees,

v.

COUNTY OF HENRICO, VIRGINIA,
Defendant,

GTE INTELLIGENT NETWORK
SERVICES, INCORPORATED, d/b/a
GTE.net,
Intervenor/Defendant,

and

BELL ATLANTIC CORPORATION; BELL
ATLANTIC-VIRGINIA, INCORPORATED;
BELL ATLANTIC INTERNET SOLUTIONS,
INCORPORATED,
Intervenors-Appellants.

VIRGINIA CITIZENS CONSUMER
COUNCIL; CONSUMER FEDERATION OF
AMERICA; CENTER FOR MEDIA
EDUCATION; CITY OF TACOMA,
WASHINGTON; MONTGOMERY COUNTY,
MARYLAND; DISTRICT OF COLUMBIA;
U.S. CONFERENCE OF MAYORS;
NATIONAL LEAGUE OF CITIES;

No. 00-1709

3

NATIONAL ASSOCIATION OF COUNTIES;
NATIONAL ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; VIRGINIA ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; TEXAS ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; MINNESOTA
ASSOCIATION OF COMMUNITY
TELECOMMUNICATIONS
ADMINISTRATORS; OPENNET
COALITION; HANDS OFF THE
INTERNET; FEDERAL COMMUNICATIONS
COMMMISSION; NATIONAL CABLE
TELEVISION ASSOCIATION; VIRGINIA
TELECOMMUNICATIONS ASSOCIATION;
WEST VIRGINIA TELECOMMUNICATIONS
ASSOCIATION; CABLE
TELECOMMUNICATIONS ASSOCIATION OF
MARYLAND, DELAWARE AND THE
DISTRICT OF COLUMBIA,
INCORPORATED; NORTH CAROLINA
CABLE TELECOMMUNICATIONS
ASSOCIATION; SOUTH CAROLINA
TELEVISION ASSOCIATION,
<u>Amici Curiae.</u>

MEDIAONE GROUP, INCORPORATED;
MEDIAONE OF VIRGINIA,
INCORPORATED; AT&T CORPORATION,
Plaintiffs-Appellees,

v.

COUNTY OF HENRICO, VIRGINIA,
Defendant-Appellant,

and

GTE INTELLIGENT NETWORK
SERVICES, INCORPORATED, d/b/a
GTE.net; BELL ATLANTIC

CORPORATION; BELL ATLANTIC-
VIRGINIA, INCORPORATED; BELL
ATLANTIC INTERNET SOLUTIONS,
INCORPORATED,
Intervenors/Defendants.

VIRGINIA CITIZENS CONSUMER
COUNCIL; CONSUMER FEDERATION OF
AMERICA; CENTER FOR MEDIA
EDUCATION; CITY OF TACOMA,
WASHINGTON; MONTGOMERY COUNTY,
MARYLAND; DISTRICT OF COLUMBIA;
U.S. CONFERENCE OF MAYORS;
NATIONAL LEAGUE OF CITIES;

No. 00-1719

NATIONAL ASSOCIATION OF COUNTIES;
NATIONAL ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; VIRGINIA ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; TEXAS ASSOCIATION OF
TELECOMMUNICATIONS OFFICERS AND
ADVISORS; MINNESOTA
ASSOCIATION OF COMMUNITY
TELECOMMUNICATIONS
ADMINISTRATORS; OPENNET
COALITION; HANDS OFF THE
INTERNET; FEDERAL COMMUNICATIONS
COMMMISSION; NATIONAL CABLE
TELEVISION ASSOCIATION; VIRGINIA
TELECOMMUNICATIONS ASSOCIATION;
WEST VIRGINIA TELECOMMUNICATIONS
ASSOCIATION; CABLE
TELECOMMUNICATIONS ASSOCIATION OF
MARYLAND, DELAWARE AND THE
DISTRICTOF COLUMBIA,
INCORPORATED; NORTH CAROLINA
CABLE TELECOMMUNICATIONS
ASSOCIATION; SOUTH CAROLINA
TELEVISION ASSOCIATION,
Amici Curiae.

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-00-33-3)

Argued: September 27, 2000

Decided: July 11, 2001

Before WIDENER, WILKINS, and MICHAEL, Circuit Judges.

6

Affirmed by published opinion. Judge Michael wrote the opinion, in which Judge Wilkins joined. Judge Widener wrote a concurring opinion.

_____

## COUNSEL

**ARGUED:** Edward Joseph Fuhr, HUNTON & WILLIAMS, Richmond, Virginia; Andrew Gerald McBride, COOPER, CARVIN & ROSENTHAL, P.L.L.C., Washington, D.C., for Appellants. David William Carpenter, SIDLEY & AUSTIN, Chicago, Illinois, for Appellees. **ON BRIEF:** Stacy C. Taylor, Eric H. Feiler, HUNTON & WILLIAMS, Richmond, Virginia; Joseph P. Rapisarda, Jr., Joseph T. Tokarz, II, Karen M. Adams, COUNTY ATTORNEY'S OFFICE, Richmond, Virginia, for Appellant Henrico. Michael A. Carvin, Noel J. Francisco, COOPER, CARVIN & ROSENTHAL, P.L.L.C., Washington, D.C., for Appellant GTE; Brett M. Kavanaugh, KIRKLAND & ELLIS, Washington, D.C., for Appellant Bell Atlantic. Peter D. Keisler, David L. Lawson, SIDLEY & AUSTIN, Chicago, Illinois; James C. Roberts, Carter Glass, IV, Dabney Carr, IV, MAYS & VALENTINE, L.L.P., Richmond, Virginia; Mark C. Rosenblum, Laura A. Kaster, AT&T CORPORATION, Basking Ridge, New Jersey; Sean Lindsay, David White, MEDIAONE GROUP, INC., Englewood, Colorado, for Appellees. Andrew Jay Schwartzman, Cheryl A. Leanza, Harold J. Feld, MEDIA ACCESS PROJECT, Washington, D.C., for Amici Curiae Consumer Council, et al. Nicholas P. Miller, William Malone, Joseph Van Eaton, John F. Noble, James R. Hobson, MILLER & VAN EATON, P.L.L.C., Washington, D.C., for Amici Curiae NATOA, et al. William P. Cook, Pamela J. Marple, MANATT, PHELPS & PHILLIPS, L.L.P., Washington, D.C., for Amicus Curiae OpenNET. Christopher Wolf, Bruce E. Boyden, PROSKAUER ROSE, L.L.P., Washington, D.C.; Tanya L. Forsheit, PROSKAUER ROSE, L.L.P., Los Angeles, California, for Amicus Curiae Hands Off. William B. Schultz, Acting Assistant Attorney General, Jacob M. Lewis, Mark Davies, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Christopher J. Wright, General Counsel, Jonathan E. Nuechterlein, Deputy General Counsel, James M. Carr, FEDERAL COMMUNICATIONS COMMISSION, Washington, D.C., for Amicus Curiae Commission. How-

ard J. Symons, Tara M. Corvo, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Washington, D.C., for Amici Curiae National Cable Television, et al.

_____

**OPINION**

MICHAEL, Circuit Judge:

AT&T Corporation is still the largest long distance telephone company in the country, and this case is about its recent entry into the broadband telecommunications market that provides high-speed access to the Internet. AT&T has acquired MediaOne Group, Inc. (MediaOne), which has a cable franchise in Henrico County, Virginia. In approving the transfer of control of the franchise, the Henrico County Board of Supervisors (the County) required MediaOne to provide any requesting Internet Service Provider (ISP) with access to its cable modem platform. AT&T and MediaOne sued the County in federal court, arguing that the open access provision was preempted by federal law (the Communications Act) and, in any event, violated state law. The district court agreed and granted summary judgment for AT&T and MediaOne. We affirm as follows. Under Bell Atlantic Md., Inc. v. Prince George's County, 212 F.3d 863 (4th Cir. 2000), we must consider the state law question first. However, because Virginia law does not provide an independent ground for disposition of the case, we proceed to the preemption question. Henrico County's open access provision violates the federal Communications Act, 47 U.S.C. § 541(b)(3)(D), by forcing MediaOne to provide its telecommunication facilities (its cable modem platform) to any ISP as a condition for the County's approval of the transfer of control of the franchise. Because the open access provision is inconsistent with the federal Communications Act, it is preempted and superceded.

I.

Most residential and small business consumers gain access to the Internet through slower narrowband technology, specifically, through the traditional dial-up telephone modem that is connected to copper lines. Broadband technology is beginning to provide many of these

8

consumers with a high-speed alternative to Internet access, and analysts are forecasting substantial growth in the demand for broadband services. The most common forms of broadband technology are cable modem platforms and digital subscriber lines (DSLs). A broadband pipeline, like the basic telephone infrastructure, serves as a conduit between an Internet user and an ISP, such as America Online, Juno, or Prodigy.

In 1998 and 1999 AT&T began a major effort to establish a foothold in broadband markets around the country. AT&T sought to enter these markets by acquiring existing cable television companies. One of its first acquisition targets was MediaOne, a large cable company with a franchise in Henrico County, Virginia. Like most cable operators, MediaOne provides traditional cable television service. However, the company has upgraded its cable systems, including the one in Henrico County, to include a cable modem platform that provides a high-speed link to the Internet. In connection with this upgrade MediaOne joined with others to form a company doing business as "Road Runner." Road Runner provides a "bundled" service that combines MediaOne's broadband pipeline (the cable modem platform) with the Internet services usually offered by an ISP. MediaOne customers who want Internet access over cable do not have the option of using just MediaOne's cable modem platform; rather, they must subscribe to Road Runner and take the Internet services it offers. Although Road Runner customers may subscribe to an ISP unaffiliated with MediaOne, most customers have no incentive to do that because the features offered by most outside ISPs are nearly identical to those offered by Road Runner. Instead of paying for a duplicative Internet service from an outside ISP, most MediaOne customers simply stick with the bundled service provided by Road Runner.

On May 6, 1999, AT&T and MediaOne entered into an agreement to merge. The merger, which has now been finalized, gives AT&T control of all of MediaOne's cable television systems, including the system that holds a franchise in Henrico County. In July 1999 AT&T and MediaOne applied to the County for formal approval of the transfer of control. The County gave its approval in an ordinance adopted in December 1999. The County's approval, however, was conditioned on the requirement that "[n]o later than December 31, 2000, [MediaOne] shall provide any requesting Internet Service Provider (ISP)

9

access to its cable modem platform (unbundled from the provision of content) on rates, terms, and conditions that are at least as favorable as those on which it provides such access to itself, to its affiliates, or to any other person." This open access condition would require MediaOne to open its broadband pipeline to unaffiliated ISPs. MediaOne customers would thus be able to access the Internet over MediaOne's cable modem platform without subscribing to the bundled Road Runner service.*

AT&T and MediaOne chafed under the open access condition mandated by Henrico County. They sued the County in federal court in the Eastern District of Virginia, seeking a declaratory judgment that the condition violates the First Amendment and the Commerce Clause, is preempted by federal law, and is void under Virginia law. AT&T and MediaOne also asked for an injunction against the enforcement of the condition. They moved promptly for summary judgment on the grounds that the open access requirement is preempted by the Communications Act of 1934, as amended by the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996), and is unenforceable under Virginia law. GTE Intelligent Network Services, Inc., Bell Atlantic Corp., Bell Atlantic Virginia, Inc., and Bell Atlantic Internet Solutions, Inc. (collectively "Verizon") were allowed to intervene as defendants on the side of the County. Verizon, of course, offers a DSL service that competes with MediaOne's Road Runner service. The County and Verizon filed a cross-motion for summary judgment asserting that the open access condition was not preempted by federal law and that it was a valid exercise of the County's authority under Virginia law.

_____

* In its order approving the transfer of control of MediaOne's federal licenses to AT&T, the Federal Communications Commission noted that MediaOne has "committed to open [its] cable modem platform to unaffiliated ISPs as soon as . . . its exclusive contract with Road Runner expires in December 2001." In the Matter of Applications for Consent to the Transfer of Control of Licenses and Section 214 Authorizations from MediaOne Group, Inc., Transferor, to AT&T Corp. Transferee, 15 F.C.C.R. 9816, ¶ 120 (2000). Specifically, MediaOne has agreed to negotiate, upon the expiration of its exclusive contract with Road Runner, mutually acceptable access agreements with unaffiliated ISPs. See id. ¶ 121.

10

The district court granted AT&T and MediaOne's motion for summary judgment. <u>See MediaOne Group, Inc. v. County of Henrico</u>, 97 F. Supp. 2d 712 (E.D. Va. 2000). The court concluded that the open access condition was preempted by several provisions of the Communications Act. First, it held that the condition violates 47 U.S.C. § 541(b)(3)(D) by requiring MediaOne to provide its telecommunications facilities "to any requesting ISP" as a condition for the County's approval of the transfer of control. <u>Id.</u> at 714. Second, the court held that the open access condition violates 47 U.S.C. § 544(e) because it would condition and restrict the use of MediaOne's transmission technology. <u>Id.</u> at 715. Third, after concluding that Road Runner is a "cable service," the court held that the open access condition is also barred by 47 U.S.C. §§ 541(c) and 544(f)(1). Because the condition would require MediaOne to provide all ISPs nondiscriminatory access to its cable modem platform, the court concluded that the County was attempting to regulate MediaOne as a "common carrier" in violation of § 541(c). <u>Id.</u> at 715-716. The court also held that the condition is contrary to § 544(f)(1)'s prohibition against "requirements regarding the provision or content of cable services." <u>Id.</u> at 716. Finally, the district court held that the open access requirement is void under Virginia law because nothing in the Virginia Code (as it relates to the regulation of cable systems) expressly or impliedly authorizes the County to impose such a condition.

The County and Verizon appeal the district court's order granting MediaOne and AT&T's motion for summary judgment. We review a summary judgment decision de novo. <u>See AT&T Communications of Va. v. Bell Atlantic-Va., Inc.</u>, 197 F.3d 663, 668 (4th Cir. 1999).

II.

This case boils down to two questions: (1) the federal constitutional question of whether the Communications Act preempts any power Henrico County has under the Virginia Code to enact an open access provision and (2) the state law question of whether the County has the authority under the Virginia Code to enact such a provision.

Recently, in <u>Bell Atlantic Md., Inc. v. Prince George's County</u>, 212 F.3d 863 (4th Cir. 2000), we observed that the question of "whether a federal statute preempts a state statute . . . is a constitutional ques-

11

tion." Id. at 865. We went on to hold that when a court is faced with a constitutional question of federal preemption and a question of state law, the court should "decide only" the state law question if it provides an independent "ground upon which the case may be disposed of." Id. at 866 (quoting Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring)). This rule is based on the principle that "courts should avoid deciding constitutional questions unless they are essential to the disposition of a case." Id. at 865. To complete the point, we state the obvious: an independent state law ground is one that allows us to avoid deciding a constitutional question. See id. at 865 (noting that the federal statute at issue reserved to local governments "specific powers" that might provide grounds for deciding the case). In sum, according to Bell Atlantic, if a case with a constitutional question of preemption also presents an independent and dispositive question under state law, we should confine ourselves to the latter. We turn, then, to Virginia law to see whether it provides an independent ground for disposition of this case.

A Virginia county's authority under state law to license and regulate cable television operators is found in Va. Code Ann. § 15.2-2108 (the "cable statute"). The General Assembly's grant of regulatory authority to the county (or locality) under the cable statute is broad:

> Localities may by ordinance exercise all the regulatory powers over cable television systems granted by the Cable Television Consumer Protection and Competition Act of 1992 (P.L. 102-3085, 1992). These regulatory powers shall include the authority (i) to enforce customer service standards in accordance with the Act, (ii) to enforce more stringent standards as agreed upon by the cable television system operator through the terms of the franchise, and (iii) to regulate the rates for basic cable service in accordance with the Act.

Va. Code Ann. § 15.2-2108(F). A Virginia county must exercise this regulatory power in a way that prevents cable operators from taking unfair advantage of their franchises. Specifically, a county must regulate in a manner consistent "with the policy of the Commonwealth to provide for the adequate, economical, and efficient delivery of [cable] systems to the consuming public [and] to protect the public from

12

excessive prices and unfair competition." Id. § 15.2-2108(E). Again, the Virginia cable statute confers broad authority on counties to regulate cable television systems, and there is no specific provision in the statute that prevents a county from enacting an open access ordinance. The Virginia statute does have a catchall provision that limits a county's authority to regulate cable operators: section 15.2-2108(E) of the Virginia Code prohibits any cable regulation or ordinance that is "inconsistent with either the laws of the Commonwealth or federal law." We have searched and have not found any Virginia statute or any decision of the courts of the Commonwealth that would prohibit the County's open access provision. The provision is thus not inconsistent with the laws of the Commonwealth. Because the open access provision is not prohibited by either the Virginia cable statute or by other laws of the Commonwealth, we do not (thus far) have any independent state law ground that allows us to avoid the federal preemption question.

The Virginia cable statute does, of course, prohibit any cable regulation or ordinance that is "inconsistent . . . with federal law." Va. Code Ann. § 15.2-2108(E). This raises the question of whether Virginia law, by embracing federal law, provides an independent state law ground for decision, thereby requiring us to avoid the constitutional question of federal preemption under the rule of Bell Atlantic Md., Inc. v. Prince George's County, 212 F.3d 863 (4th Cir. 2000). If we were to decide this case under § 15.2-2108(E) of the Virginia cable statute, the question would be whether Henrico County's open access provision is "inconsistent . . . with federal law," that is, the Communications Act. This is the same question we would ask under a federal preemption analysis. See 47 U.S.C. § 556(c) ("[A]ny provision of law of any . . . franchising authority . . . which is inconsistent with [the Communications Act] shall be deemed to be preempted and superceded."). If we were to decide the state law question first, we would in effect be deciding the federal preemption question as well. Thus, the state law ground in this case is not independent because it does not allow us to "avoid deciding [the] constitutional question[ ]" of federal preemption. Bell Atlantic, 212 F.3d at 865. We are therefore free under Bell Atlantic to proceed to the question of federal preemption and determine whether Henrico County's open access provision "is inconsistent with" the Communications Act. See 47 U.S.C. § 556(c).

13

The district court held that the open access provision is inconsistent with 47 U.S.C. § 541(b)(3)(D) because it would require MediaOne to provide telecommunications facilities as a condition for approving transfer of control of MediaOne's cable franchise to AT&T. See MediaOne Group, Inc. v. County of Henrico, 97 F. Supp. 2d 712, 714 (E.D. Va. 2000). Section 541(b)(3)(D) says that "a franchising authority may not require a cable operator to provide any telecommunications service or facilities, other than institutional networks, as a condition of the initial grant of a franchise, franchise renewal, or a transfer of a franchise." 47 U.S.C. § 541(b)(3)(D) (emphasis added). The term "telecommunications" is defined as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." Id. § 153(43). Although the Communications Act does not define the word "facilities" as used in "telecommunications facilities," it is evident from the language of the statute that these facilities are the physical installations or infrastructure necessary for transmission.

MediaOne's Road Runner service combines the use of a cable modem platform with access to the Internet. Road Runner's cable modem platform, separated from its Internet service component, is a telecommunications facility because it is a pipeline for telecommunications, that is, for "the transmission . . . of information of the user's choosing, without change in the form or content." Id. § 153(43) (defining "telecommunications"). As a condition for approving the change in control of the MediaOne franchise, the County required MediaOne to provide its "cable modem platform (unbundled from the provision of content)" to "any requesting Internet Service Provider." The provision unbundles Road Runner's Internet access service from its cable modem platform and compels MediaOne to offer the platform to unaffiliated ISPs for use as a transmission pipeline for their services. The open access provision therefore requires MediaOne to provide "telecommunications . . . facilities . . . as a condition of . . . a transfer of a franchise" in violation of § 541(b)(3)(D).

The County and Verizon argue that even if the cable modem platform is a telecommunications facility, § 541(b)(3)(D) still does not outlaw the open access provision. Section 541(b)(3)(D), they say, only prohibits localities from requiring cable operators to construct

14

new telecommunications facilities, and the provision here does not impose any such requirement. That argument ignores the statute's plain language. Again, § 541(b)(3)(D) declares that franchising authorities may not require cable operators "to provide any telecommunications . . . facilities" as a condition to the transfer of a franchise. The section does not limit itself to new construction. Rather, it bars any condition that requires a cable operator to provide telecommunications facilities regardless of whether the facilities are in existence or must be built.

The County makes a separate argument that MediaOne's facilities qualify as a "cable system" that cannot be said to include any telecommunications facilities. Under the Communications Act a cable system is defined as "a facility . . . that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community." 47 U.S.C. § 522(7). The County points out that MediaOne offers traditional "cable services," like video programming, over its facilities. It therefore asserts that because its system is "<u>designed</u> to provide cable service" it cannot be considered a telecommunications facility. According to the County, providing Internet access over its cable system does not magically transform the cable system into a telecommunications facility.

We disagree with the County. The Communications Act recognizes that some facilities can be used to provide more than one type of service. The Act therefore contemplates that multi-purpose facilities will receive different regulatory classification and treatment depending on the service they are providing at a given time. For example, under 47 U.S.C. § 522(7)(C) the definition of "cable system" does not include a facility of a common carrier that offers telecommunications services "except that such facility shall be considered a cable system . . . to the extent that such facility is used in the transmission of video programming directly to subscribers, unless the extent of such use is solely to provide interactive on-demand services." In addition, under 47 U.S.C. § 153(46) the term "telecommunications service" is defined as "the offering of telecommunications for a fee directly to the public . . . <u>regardless of the facilities used</u>." (emphasis added). Therefore, although MediaOne maintains a "cable <u>system</u>," its facilities can be properly classified as telecommunications facilities when they provide a transmission path to the Internet.

15

Because the open access condition violates § 541 (b)(3)(D) of the Communications Act, our analysis of federal law may stop at that. Some of the parties want us to go further, however, and determine the specific regulatory classification of MediaOne's Road Runner service. The County argues that Road Runner is a "cable <u>service</u>" under the Communications Act. <u>See</u> 47 U.S.C. § 522(6) (defining the term "cable service" as "(A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service"). It is very much in the County's interest to have Road Runner classified as a cable service. This would allow the County to regulate a cable operator's provision of Internet access over cable lines. <u>See</u> 47 U.S.C. §§ 541-49 (authorizing localities to establish and enforce requirements for cable facilities, equipment, and customer service). Verizon, on the other hand, urges us to hold that the Road Runner service is a "telecommunications service." 47 U.S.C. § 153(46) (defining the term "telecommunications service" as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used"). Verizon has an incentive to make this argument. Any determination that Road Runner is a "telecommunications service" could have significant regulatory consequences. Certain federal common carrier obligations could arise, <u>see, e.g.</u>, 47 U.S.C. §§ 201(b), 251, and all providers of "interstate telecommunications services" must contribute to the universal service fund supporting affordable telephone service, <u>see</u> 47 U.S.C. §§ 153(44), 202, 254. At bottom, Verizon seeks regulatory parity because its DSL service is already regulated as a telecommunications service. <u>See, e.g.</u>, <u>In re Deployment of Wireline Servs. Offering, Advanced Telecommunications Capability</u>, 15 F.C.C.R. 385, ¶ 9 (1999). Finally, although no one makes the argument here, Road Runner might even be considered an "information service" under the Communications Act. <u>See</u> 47 U.S.C. § 153(20) (defining "information service" as "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications"). If Road Runner is classified as an information service, it would not be subject to local franchising or common carrier regulation. <u>See</u> Federal-State Joint Bd. on Universal Serv., Report, 13 F.C.C.R. 11,501, ¶ 39 (1998).

16

As the preceding paragraph illustrates, the issue of the proper regulatory classification of cable modem service, such as Road Runner, is complex and subject to considerable debate. The outcome will have a marked effect on the provision of Internet services. The FCC, in its amicus brief, has diplomatically reminded us that it has jurisdiction over all interstate communications services, including high-speed broadband services. The FCC also advises us that it has initiated a proceeding, through a notice of inquiry, to examine classification and open access issues. <u>See</u> Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities, 65 Fed. Reg. 60,441 (2000). The FCC's notice seeks comment on whether cable modem technology should be classified as a cable service, a telecommunications service, or an information service, and it also seeks comment on the implications of adopting any particular classification. <u>See</u> In the Matter of Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities, No. 00-355, 2000 WL 1434689, ¶ 15 (Sept. 28, 2000). In addition, the notice indicates that the FCC is interested in determining whether open access to cable modem platforms is necessary to further the "goals of promoting competition, deregulation, innovation, and the deployment of high-speed services." <u>Id.</u> ¶ 32. Of course, the merits of open access are not before us. And, as we have already indicated, we do not have to reach the question of whether MediaOne's bundled Road Runner service is a cable service, a telecommunications service, or an information service. For the time being, therefore, we are content to leave these issues to the expertise of the FCC.

We simply hold that Henrico County violated § 541(b)(3)(D) when it conditioned the transfer of control of MediaOne's cable franchise by requiring MediaOne to unbundle its Road Runner service and provide open access to its telecommunications facilities, that is, its cable modem platform. Because the open access provision is inconsistent with the federal Communications Act, it is preempted. We therefore affirm the judgment of the district court.

<u>AFFIRMED</u>

WIDENER, Circuit Judge, concurring:

I concur in the result. I arrive at that result, however, by a different route from that of the majority.

17

In this case, Henrico County, by ordinance, required open access to its cable modem platform, which requirement is in violation of the Federal Communications Act, 47 U.S.C. § 541(b)(3)(D), slip op. at 8.

A Virginia statute, Virginia Code § 15.2-2108(E) (1998), provides, in pertinent part, that "[n]o locality may regulate cable television systems by regulations inconsistent with either laws of the Commonwealth <u>or federal law relating to cable television operations</u>." (italics added)

Thus, Virginia has tried, as best as she may, even by specific statute, to prevent her counties from running afoul of the Federal Communications Act.

The determination of whether or not a local law has been preempted by federal law is a Constitutional question. It "is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the Constitutional question of whether they are in conflict." <u>Chicago & NWTR Co. v. Kalo Brick & Tile Co.</u>, 450 U.S. 311, 317 (1981) (internal quotations omitted).

In Virginia, a county has only the powers expressly granted to it by the Commonwealth, or necessarily implied, and a local ordinance in violation thereof is invalid. <u>Bd. of Supervisors of Augusta County v. Countryside Inv. Co.</u>, 522 S.E.2d 610, 613 (Va. 1999).

The second rule of construction in <u>Ashwander v. TVA</u>, 297 U.S. 288, 346-47 (Brandeis, J., concurring) (1936), is: "The court will not anticipate a question of Constitutional law in advance of the necessity of deciding it . . . . It is not the habit of the Court to decide questions of a Constitutional nature unless absolutely necessary to a decision of the case." (internal quotations omitted) And the fourth rule of <u>Ashwander</u> is: "The Court will not pass upon a Constitutional question, although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." <u>Ashwander</u>, 297 U.S. at 346-47. I suggest the majority decision violates both these rules.

In my opinion, the Henrico County ordinance is in violation of state law, being "inconsistent with . . . federal law" under Virginia

18

Code § 15.2-2108(E). Thus, our decision should rest on the fact that the Henrico County ordinance is contrary to state law, that ground having presented itself, instead of, contrary to <u>Ashwander</u>, deciding a Constitutional question which gets the same result.

What purpose is served by States trying to cooperate, as here, if their statutes are to be routinely Constitutionally preempted?

19