**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

COLUMBIA VENTURE LLC,

*Plaintiff-Appellee,*

and

HEATHWOOD HALL EPISCOPAL
SCHOOL,

*Intervenor/Plaintiff-Appellee,*

v.

SOUTH CAROLINA WILDLIFE
FEDERATION; DR. JOHN GREGO; DR.
DANIEL TUFFORD; RIVERLAND PARK
NEIGHBORHOOD ASSOCIATION,

*Intervenors/Defendants-Appellants,*

and

FEDERAL EMERGENCY MANAGEMENT
AGENCY,

*Defendant.*

No. 05-2398

COLUMBIA VENTURE LLC,

*Plaintiff-Appellee,*

and

HEATHWOOD HALL EPISCOPAL SCHOOL,

*Intervenor/Plaintiff-Appellee,*

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY,

*Defendant-Appellant,*

and

SOUTH CAROLINA WILDLIFE FEDERATION; DR. JOHN GREGO; DR. DANIEL TUFFORD; RIVERLAND PARK NEIGHBORHOOD ASSOCIATION,

*Intervenors/Defendants.*

No. 06-1072

COLUMBIA VENTURE LLC,

         *Plaintiff-Appellee,*

   and

HEATHWOOD HALL EPISCOPAL
SCHOOL,

      *Intervenor/Plaintiff-Appellee,*

        v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY,

       *Defendant-Appellant,*

   and

SOUTH CAROLINA WILDLIFE
FEDERATION; DR. JOHN GREGO; DR.
DANIEL TUFFORD; RIVERLAND PARK
NEIGHBORHOOD ASSOCIATION,

      *Intervenors/Defendants.*

No. 08-1033

COLUMBIA VENTURE LLC,

*Plaintiff-Appellee,*

and

HEATHWOOD HALL EPISCOPAL
SCHOOL,

*Intervenor/Plaintiff-Appellee,*

v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY,

*Defendant,*

and

SOUTH CAROLINA WILDLIFE
FEDERATION; DR. JOHN GREGO; DR.
DANIEL TUFFORD; RIVERLAND PARK
NEIGHBORHOOD ASSOCIATION,

*Intervenors/Defendants-Appellants.*

No. 08-1034

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Margaret B. Seymour, District Judge.
(3:01-cv-04100-MBS)

Argued: January 28, 2009

Decided: April 3, 2009

Before WILLIAMS, Chief Judge, and MOTZ and SHEDD,
Circuit Judges.

Vacated and remanded by published per curiam opinion.

**COUNSEL**

**ARGUED:** Sharon Swingle, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C.; James Blanding Holman, SOUTHERN ENVIRONMENTAL LAW CENTER, Charleston, South Carolina, for Federal Emergency Management Agency, South Carolina Wildlife Federation, John Grego, Daniel Tufford, and Riverland Park Neighborhood Assocation. Manton McCutchen Grier, HAYNSWORTH, SINKLER & BOYD, P.A., Columbia, South Carolina, for Columbia Venture LLC and Heathwood Hall Episcopal School. **ON BRIEF:** Jordan S. Fried, Associate Chief Counsel for Litigation, Lynda K. Pilgrim, Senior Trial Attorney, FEDERAL EMERGENCY MANAGEMENT AGENCY, Washington, D.C.; Gregory G. Katsas, Acting Assistant Attorney General, Kevin F. McDonald, Acting United States Attorney, Michael Jay Singer, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Federal Emergency Management Agency. J. Preston Strom, Jr., STROM LAW FIRM, L.L.C., Columbia, South Carolina, Frank R. Ellerbe III, Robinson, McFadden & Moore, P.C., Columbia, South Carolina, for Heathwood Hall Episcopal School; Sarah Michaels Montgomery, William C. Boyd, Elizabeth H. Black, HAYNSWORTH, SINKLER & BOYD, P.A., Columbia, South Carolina, for Columbia Venture LLC.

---

**OPINION**

PER CURIAM:

The Federal Emergency Management Agency ("FEMA"), the South Carolina Wildlife Federation, Dr. John Grego, Dr. Daniel Tufford, and the Riverland Park Neighborhood Association ("Defendants") jointly appeal the district court's order vacating the 2001 base flood elevation determinations adopted by FEMA for Richland County, South Carolina. The

district court vacated these determinations because of FEMA's failure to timely publish notice in the Federal Register as required by 42 U.S.C. § 4104(a). Because Columbia Venture did not establish that it was prejudiced by this failure to publish, we reverse the district court's Order of Vacatur and remand for further proceedings.[1]

I

A.

FEMA is responsible for implementing the National Flood Insurance Program ("NFIP"), 42 U.S.C. § 4001(c). To that end, FEMA develops federal criteria aimed at inducing state and local governments to "guide the development of proposed construction away from locations which are threatened by flood hazards." 42 U.S.C. § 4102(c)(2). FEMA makes various scientific and technical determinations to help identify flood hazards for a given area. One such determination, the "base flood elevation," measures the potential water level height during a base flood.[2] FEMA uses these base flood elevation determinations to prepare flood insurance rate maps ("flood maps") for local communities participating in NFIP. These maps, among other things, delineate the minimum regulatory floodway that a community must adopt to comply with NFIP.[3]

---

[1]FEMA also appeals the district court's November 2, 2007, text order clarifying that the Order of Vacatur invalidated all of FEMA's 2001 base flood elevation determinations, including the floodway determinations, for the Congaree River in Richland County. As a result of our analysis herein, we reverse that order as well.

[2]A "base flood" is the flood "having a one percent chance of being equalled or exceeded in any given year." 44 C.F.R. § 59.1. It is also referred to as the "100-year flood."

[3]The "regulatory floodway" is the area of the floodplain that can "carry the waters of the base flood, without increasing the water surface elevation of that flood more than one foot at any point." 44 C.F.R. § 60.3(d)(2). FEMA requires local communities that participate in NFIP to limit construction within the regulatory floodway. 44 C.F.R. § 60.3(d)(3).

In establishing base flood elevations for a local community, FEMA follows a specified set of procedures. It must "first propose such determinations by publication for comment in the Federal Register, by direct notification to the chief executive officer of the community, and by publication in a prominent local newspaper." 42 U.S.C. § 4104(a). The newspaper publication must occur at least twice during the 10-day period following notification to the local government, and the second newspaper publication triggers a 90-day period during which "any owner or lessee of real property within the community who believes his property rights to be adversely affected [by the proposed determinations] . . . may appeal such determination to the local government." *Id.* § 4104(b). The local government reviews any appeals and decides whether to appeal the determinations to FEMA in the name of the local community. *Id.* § 4104(c). If the community chooses not to appeal, FEMA instead consolidates and reviews the individual appeals filed with the community. *Id.* § 4104(d).

The sole grounds for an appeal under § 4104(b) is a claim that the elevations are scientifically or technically incorrect. *Id.* FEMA must "review and take fully into account" any submitted data that tends to "negate or contradict the information upon which [the] proposed determination is based." *Id.* § 4104(e). Once FEMA resolves the administrative appeal, any appellant aggrieved by its final determination has 60 days to appeal to the federal district court where the community is located.

## B.

In 1998, FEMA began the process of redrawing the flood maps for the portion of the Congaree River located in Richland County, South Carolina. Columbia Venture planned to build a research development park on property along the Congaree River. Because local ordinances sharply restricted construction within FEMA's regulatory floodway, the park's success largely depended on FEMA adopting a floodway that

did not include Columbia Venture's land. In August 1999, FEMA issued its proposed base flood elevation determinations for this section of Richland County. FEMA held a meeting on August 19, 1999, to present these determinations to the public. Pursuant to § 4104, FEMA enclosed its determinations in a letter to Richland County on September 1, 1999, and gave public notification in *The State*, a "prominent local newspaper," on September 7 and 14, 1999. Critical to this case, although the § 4104(b) 90-day appeals period began on September 14 and ended on December 13, 1999, FEMA had not yet published its August 1999 proposed determinations in the Federal Register.

The August 1999 proposed determinations did not implicate or affect the portion of Columbia Venture's land upon which the development park was to be built. Therefore, although other parties lodged an appeal with FEMA during the 90-day period, Columbia Venture did not. Nevertheless, Columbia Venture submitted technical information to FEMA in support of the August 1999 proposed determinations. In addition, FEMA individually contacted Lockwood Greene, an engineering firm working for Columbia Venture, and offered to meet and discuss the proposed flood map, "the data and analysis that you have provided, and any additional data that you may have." J.A. 2219. Lockwood Greene made a formal presentation to FEMA in April 2000, and Columbia Venture contacted FEMA officials several times thereafter. These contacts culminated in a letter from Columbia Venture to FEMA stating that "your agency has provided more than adequate opportunities for all interested parties to submit pertinent information" and urging FEMA to "complete the mapping process as soon as possible and issue the final letter of determination." J.A. 2177.

On September 26, 2000, FEMA issued revised flood insurance studies and rate maps which altered and superceded the August 1999 proposed determinations. FEMA notified Columbia Venture of these September 2000 revised determi-

nations, as Columbia Venture's land was within the new floodway. FEMA provided an initial 30-day period for comment and subsequently granted Columbia Venture's request for additional time. Columbia Venture took advantage of this opportunity, submitting extensive additional technical information for FEMA's consideration and attending two meetings to discuss the September 2000 determinations. The extended deadline for comment expired on February 15, 2001, more than 140 days after Columbia Venture and other parties received notification of the revisions.

On February 16, 2001, FEMA first published notice in the Federal Register as required by § 4104(a). In that publication, FEMA referenced the August 1999 proposed base flood elevation determinations, even though those determinations had been superceded by the September 2000 revised determinations. The February 2001 Federal Register publication also stated that the comment period would run for 90 days from the date of the second publication in a prominent local newspaper. Because FEMA's second publication in *The State* occurred on September 14, 1999, this period had expired more than a year before the Federal Register publication.[4] FEMA ultimately issued a final determination in August 2001, which adopted the September 2000 revised determinations and therefore adopted a floodway encompassing Columbia Venture's land.

Columbia Venture challenged FEMA's August 2001 decision in federal district court, disputing the technical and scientific basis for the base flood elevation determinations pursuant to § 4104(g). In 2005, Columbia Venture first learned of FEMA's defective publication. It filed a motion to vacate the

---

[4]Although this series of events is somewhat confusing, the Federal Register publication provided the name, physical address, email address, and phone number of a FEMA official to contact for further information. J.A. 622. There is no evidence in the record that anyone attempted to contact FEMA with questions regarding the timing of the comment period.

final base flood elevation determinations for the Congaree River, arguing that FEMA's failure to comply with § 4104(a) rendered those determinations null and void. The district court granted the motion in favor of Columbia Venture. Defendants timely appealed.

## II

FEMA does not dispute that it failed to timely publish notice of its August 1999 proposed determinations in the Federal Register in violation of § 4104(a). However, a failure to timely publish does not *per se* result in nullification of the agency action. Instead, § 4104(g) incorporates chapter 7 of Title 5 of the Administrative Procedures Act, which provides that "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. Therefore, "the party who claims deficient notice bears the burden of proving that any such deficiency was prejudicial," and if that party fails to carry its burden, the agency's decision must be upheld. *Friends of Iwo Jima v. National Capital Planning Comm'n*, 176 F.3d 768, 774 (4th Cir. 1999).

In *Friends of Iwo Jima*, we upheld an agency action despite the agency's failure to comply with a requirement to publish timely notice of relevant meetings in the Federal Register because the procedural error was harmless. *Id.* at 773. The aggrieved party, Friends of Iwo Jima, failed to show that "the outcome of the process would have differed in the slightest had notice been at its meticulous best." *Id.* at 774. Thus, we held that Friends of Iwo Jima had not shown prejudice; instead, its position "was considered and simply did not prevail." *Id.* at 774.

The district court applied *Friends of Iwo Jima* and concluded that Columbia Venture established prejudice because it "was deprived of the opportunity to elicit support from the public at-large." J.A. 747. Defendants contend that this was a misapplication of *Friends of Iwo Jima*, and we agree. *Friends*

*of Iwo Jima* requires the aggrieved party to show prejudice with respect to its own arguments and claims. Accordingly, we found that Friends of Iwo Jima did not show prejudice because the agency's discussion centered around the "identical substantive claims Friends of Iwo Jima makes here," and because "the position of Friends of Iwo Jima was the main focus of each stage in the approval process." *Friends of Iwo Jima*, 176 F.3d at 774.

Despite Columbia Venture's attempts to distinguish *Friends of Iwo Jima*, we find that it controls. Columbia Venture has not shown that it suffered prejudice as a result of FEMA's defective publication. It was deeply involved in the administrative process from the beginning, received actual knowledge of each development, had ample opportunity to be heard, and submitted voluminous data challenging the technical and scientific underpinnings of FEMA's conclusions. It also participated in the initial public meeting in August 1999 and held multiple private meetings with FEMA decision-makers along the way.[5] As in *Friends of Iwo Jima*, because its position "was considered and simply did not prevail," Columbia Venture was not prejudiced. *Friends of Iwo Jima*, 176 F.3d at 774.

### III

Because FEMA's failure to comply with § 4104(a) did not prejudice Columbia Venture, we reverse the district court's Order of Vacatur and remand for further proceedings.[6]

*VACATED AND REMANDED*

---

[5]To the extent that there is a significant distinction between this case and *Friends of Iwo Jima*, that distinction cuts against Columbia Venture. Unlike *Friends of Iwo Jima*, who "attended none of the meetings and submitted no comments," *Friends of Iwo Jima*, 176 F.3d at 774, Columbia Venture was intimately involved in the administrative process in this case.

[6]In light of our decision released today in the companion case, *In re Bees v. Columbia Venture*, 06-1071, we find that reassignment to a different judge is appropriate on remand. *See United States v. Lentz*, 383 F.3d 191, 221 (4th Cir. 2004)(reassigning case to a different judge on remand to minimize "even a suspicion of partiality").