**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

COLUMBIA VENTURE, LLC,

          *Plaintiff-Appellant,*

      v.

DEWBERRY & DAVIS, LLC,

          *Defendant-Appellee,*

        and

UNITED STATES OF AMERICA,

          *Party-in-Interest.*

UNITED STATES OF AMERICA;
AMERICAN COUNCIL OF ENGINEERING
COMPANIES; AMERICAN COUNCIL OF
ENGINEERING COMPANIES OF
METROPOLITAN WASHINGTON;
AMERICAN SOCIETY OF CIVIL
ENGINEERS; ASSOCIATION OF
FLOODPLAIN MANAGERS,

      *Amici Supporting Appellee.*

No. 08-1318

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Margaret B. Seymour, District Judge.
(3:06-cv-02525-MBS)

Argued: October 27, 2009

Decided: May 12, 2010

Before MOTZ and SHEDD, Circuit Judges, and
Jane R. ROTH, Senior Circuit Judge
of the United States Court of Appeals
for the Third Circuit, sitting by designation.

---

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Motz and Senior Judge Roth joined.

---

## COUNSEL

**ARGUED**: Manton McCutchen Grier, HAYNSWORTH, SINKLER & BOYD, PA, Columbia, South Carolina, for Appellant. Sharon Swingle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States of America, Amicus Supporting Appellee; James F. Lee, Jr., LEE & MCSHANE, PC, Washington, D.C., for Appellee. **ON BRIEF:** Hamilton Osborne, Jr., James Y. Becker, Sarah Michaels Montgomery, HAYNSWORTH, SINKLER & BOYD, PA, Columbia, South Carolina, for Appellant. Jonathan P. Rolfe, LEE & MCSHANE, PC, Washington, D.C.; Francis M. Mack, David A. Anderson, Mason M. Summers, RICHARDSON PLOWDEN & ROBINSON, PA, Columbia, South Carolina, for Appellee. Gregory G. Katsas, Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., W. Walter Wilkins, United States Attorney, Columbia, South Carolina, Michael Jay Singer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States of America, Amicus Supporting Appellee. E. Duncan Getchell, Jr., Robert L. Hodges, Jeffrey S. Shapiro, Erin M. Sine, MCGUIRE-WOODS, LLP, Richmond, Virginia, for American Council of Engineering Companies, American Council of Engineering Companies of Metropolitan Washington, American Society of Civil Engineers, Amici Supporting Appellee. David K. Mears,

VERMONT LAW SCHOOL, Environmental and Natural Resources Law Clinic, South Royalton, Vermont; Jon Kusler, Associate Director, ASSOCIATION OF STATE WETLAND MANAGERS, Berne, New York, for Association of Floodplain Managers, Amicus Supporting Appellee.

## OPINION

SHEDD, Circuit Judge:

Columbia Venture, LLC appeals an order of the district court dismissing its second amended complaint with prejudice. *See* Fed. R. Civ. P. 12(b)(6). The court concluded that Columbia Venture's state law claims are preempted by the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. §§ 4001 *et seq*. For the following reasons, we affirm.

### I.

### A.

We review *de novo* a district court's order dismissing a claim under Federal Rule of Civil Procedure 12(b)(6). *See Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769, 772 (4th Cir. 2003); *see also AES Sparrow Point LNG, LLC v. Smith*, 527 F.3d 120, 125 (4th Cir. 2008) (holding that federal preemption is a legal question that we review *de novo*). To survive a Rule 12(b)(6) motion, a plaintiff must allege enough facts "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). When considering an order dismissing a claim under Rule 12(b)(6), we assume all factual allegations in the pleadings to be true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B.

Columbia Venture owns a large parcel of property along the Congaree River in South Carolina. In 1998, the Federal Emergency Management Agency ("FEMA") began a reassessment of flood elevation maps of this area. Pursuant to the NFIA, FEMA hired Dewberry & Davis, LLC ("Dewberry") as an independent contractor to provide engineering and related services to assist in the remapping effort. Dewberry provided the hydraulic model used to designate a large portion of Columbia Venture's property as part of the floodway. This designation prevented Columbia Venture from developing much of its property, thereby greatly reducing the property's value. Columbia Venture filed an administrative appeal of FEMA's determination pursuant to 42 U.S.C. § 4104 that was ultimately unsuccessful. *See Columbia Venture, LLC v. SC Wildlife Fed.*, 562 F.3d 290 (4th Cir. 2009) (per curiam) (holding that FEMA's failure to timely publish notice in accordance with § 4104 was harmless and did not warrant vacating FEMA's final determination).[1]

Columbia Venture then brought this action against Dewberry, alleging state law claims of professional malpractice, civil conspiracy, injurious falsehood, and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). Columbia Venture contends that the hydraulic model provided by Dewberry, which was used to determine the flood elevations, is flawed and inaccurate. Columbia Venture also argues that FEMA concealed this information and the reasons for the changes in the floodway determination when it pursued its administrative appeal.

Pursuant to Rule 12(b)(6), Dewberry moved to dismiss the first amended complaint on the ground that the statute of limi-

---

[1]We note that, although not alleged in its complaint, Columbia Venture also filed a lawsuit against Richland County, South Carolina on August 19, 2004, for injuries allegedly caused by the final determinations.

tations had run on Columbia Venture's claims. The district court denied the motion, holding that Columbia Venture had alleged sufficient facts to support a finding that it did not have notice of its potential cause of action against Dewberry. Columbia Venture then filed a second amended complaint, and Dewberry filed another motion to dismiss pursuant to Rule 12(b)(6). In this motion, Dewberry argued that the claims were preempted by the NFIA. Additionally, Dewberry argued that all of Columbia Venture's claims were time-barred and, alternatively, that the claims otherwise failed because Dewberry did not owe a duty of care to Columbia Venture. Dewberry also argued that Columbia Venture failed to properly allege a conspiracy claim, failed to properly allege an injurious falsehood claim, and did not state a claim under SCUTPA.

The district court dismissed the second amended complaint, holding that the NFIA preempts Columbia Venture's state law claims under a theory of obstacle preemption, which is a sub-set of implied conflict preemption. Specifically, the court held that permitting landowners to bring state law tort claims against FEMA's independent contractors would obstruct the purposes of the NFIA because such litigation would increase the cost to FEMA and hinder its efforts to implement the flood insurance program. Further, the court held that such claims would destroy the balance struck by Congress in establishing the limited administrative appeals process under 42 U.S.C. § 4104. Because it held that Columbia Venture's claims are preempted, the court did not reach Dewberry's alternative theories for dismissal.

## II.

The initial question we have to address is one we raised at oral argument: whether the district court addressed the issue of preemption prematurely under constitutional avoidance principles. We have held that federal preemption of state law is a constitutional question because it is premised on the

Supremacy Clause of the United States Constitution, and when a party provides alternative independent state law grounds for disposing of a case, courts should not decide the constitutional question of preemption before considering the state law grounds. *See Bell Atl. Md., Inc. v. Prince George's County*, 212 F.3d 863, 865 (4th Cir. 2000) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341, 346-47 (1936) (Brandeis, J., concurring)); *see also H & R Block E. Enter., Inc. v. Raskin*, 591 F.3d 718, 723-24 (4th Cir. 2010) (applying *Bell Atlantic* to remand the case for consideration of whether the statute applied to the plaintiff before deciding whether it was preempted). In this context, "an independent state law ground is one that allows us to avoid deciding a constitutional question." *MediaOne Group, Inc. v. County of Henrico*, 257 F.3d 356, 361 (4th Cir. 2001).

Here, Dewberry asserts five state law grounds for dismissal. Three of these grounds — that Columbia Venture failed to state a conspiracy claim, an injurious falsehood claim, or South Carolina Unfair Trade Practices claim — are clearly not independent state law grounds that allow us to avoid deciding the preemption issue because they only relate to one of the five claims. *See id.* at 361. Accordingly, we need not address these issues under *Bell Atlantic*.

Dewberry also argues that Columbia Venture's claims fail because it did not owe a common law duty of care to Columbia Venture. However, Columbia Venture's SCUTPA claims are not governed by a common law duty of care but by S.C. Code Ann. § 39-5-140. Therefore, the lack of duty defense is not an independent state law ground because a holding that Dewberry owed no common law duty to Columbia Venture would still leave the preemption issue to be resolved with respect to the SCUTPA claim. *See MediaOne Group, Inc.*, 257 F.3d at 361. Accordingly, we need not address this theory under *Bell Atlantic*.

Finally, Dewberry argues that all of Columbia Venture's claims are time-barred. Unlike Dewberry's other grounds for

dismissal, this ground is potentially dispositive of all of the claims because all claims are governed by a three-year statute of limitations period. S.C. Code Ann. §§ 15-3-530(5), 39-5-150. Under *Bell Atlantic*, this independent state law ground must be addressed before we reach preemption. Although we have discretion to address this issue or to remand it for consideration by the district court, the district court already denied Dewberry's motion to dismiss on this ground with regard to the first amended complaint. Because we see no distinction between the amended complaint and the second amended complaint as they relate to the statute of limitations defense, we now address it on appeal.

Dewberry bears the burden of establishing that the claims are barred by the statute of limitations, and where the material facts are in dispute, the issue becomes one for the jury. *Brown v. Finger*, 124 S.E.2d 781, 786 (S.C. 1962). Pursuant to South Carolina's discovery rule, the three-year limitations period begins to run "where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Wiggins v. Edwards*, 442 S.E.2d 169, 170 (S.C. 1994) (citing *Snell v. Columbia Gun Exchange, Inc.*, 278 S.E.2d 333, 334 (S.C. 1981)); *see Graniteville Co., Inc. v. IH Serv., Inc.*, 447 S.E.2d 226, 228 (S.C. Ct. App. 1997) (holding that plaintiff could not have known of its potential cause of action until an expert determined the cause of the fire). Under this rule, the statute of limitations is triggered when the plaintiff discovers the *injury*, not when he discovers the *identity* of another alleged tortfeasor. *See Wiggins*, 442 S.E.2d at 170.

Columbia Venture alleges professional malpractice among other claims. In some professional malpractice cases, South Carolina courts have found that the potential claim was or should have been discovered not when the plaintiff had knowledge of the injury but when the plaintiff had reason to know that the injury alone was the result of wrongful conduct

by the professional. *See Garner v. Houck*, 435 S.E.2d 847, 849 (S.C. 1993) (finding that a jury question was presented as to when the plaintiff knew or should have known that he had a cause of action against doctors for negligence that caused a family member's death); *True v. Monteith*, 489 S.E.2d 615, 617 (S.C. 1997) (holding that there was a question of fact as to when the client learned of the defendant attorney's ethical conflict).

In this case, FEMA adopted its final determination for Columbia Venture's property on August 20, 2001. Columbia Venture brought this action on September 13, 2006. It alleges that until FEMA disclosed its reliance on the hydraulic model prepared by Dewberry in April 2005, it did not have reason to know of Dewberry's alleged wrongful conduct. Viewed in the light most favorable to Columbia Venture, the factual allegations of the complaint are sufficient to support a finding that Columbia Venture did not have notice of its potential cause of action against Dewberry until FEMA revealed its use of the hydraulic model provided by Dewberry. Consequently, it is not appropriate to dismiss the complaint under Rule 12(b)(6) on the ground that the claims are time-barred. Therefore, there are no independent state law grounds on which to dismiss the complaint.

## III.

We now turn to Columbia Venture's argument that the district court erred in holding that its claims are preempted under a theory of obstacle preemption. Obstacle preemption is a type of conflict preemption authorized by the Supremacy Clause. *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191-92 (4th Cir. 2007). It applies "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). This occurs where state law "interferes with the *methods* by which the federal statute was

designed to reach [its] goal." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) (emphasis added) (internal quotation marks omitted). We have explained that

> [a] decision about [obstacle preemption] requires the court independently to consider national interests and their putative conflict with state interests. . . . [P]reemption under [an obstacle preemption] theory is more an exercise of policy choices by a court than strict statutory construction.

*Abbot v. Am. Cynamid Co.*, 844 F.2d 1108, 1113 (4th Cir. 1988). Obstacle preemption can apply not only to positive enactments of state law but also to state tort claims alleging violation of a common law duty. *See*, *e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) (holding that negligence action against a manufacturer was preempted because it conflicted with a federal agency standard).

## A.

In considering whether Columbia Venture's claims are preempted, we must start with the general presumption that Congress did not intend to preempt state law. *Abbot*, 844 F.2d at 1112. This presumption is especially strong against "preemption of state remedies like tort recoveries, when no federal remedy exists." *Id.* (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984)). Because "[t]he purpose of Congress is . . . the 'ultimate touchstone' of a preemption analysis," we first examine the purposes of the NFIA. *See Anderson*, 508 F.3d at 192 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).

In 1968, Congress established the National Flood Insurance Program ("NFIP") in response to recurring flood disasters that were "placing an increasing burden on the Nation's resources." *Studio Frames Ltd. v. Std. Fire Ins. Co.*, 483 F.3d 239, 243 (4th Cir. 2007) (quoting 42 U.S.C. § 4001(a)). In the

face of the high risk of such disasters, private insurance companies were not offering flood insurance on flood-prone property. *Id.* Congress responded to this increasing problem by creating the NFIP "which (1) makes federally subsidized flood insurance available in flood-prone areas and (2) encourages states and localities to adopt land use policies and regulations that reduce the risk of flood damage." *Id.* (citing § 4001(a)-(e)). In order for communities to be eligible for federal flood insurance under the NFIA, they are required to adopt community floodplain ordinances in accordance with flood hazard maps promulgated by FEMA. § 4012(c).

FEMA is responsible for administering the NFIP and, in doing so, it maps flood elevations to identify flood hazards. *See Columbia Venture, LLC*, 562 F.3d at 292; 42 U.S.C. §§ 4011, 4101. FEMA is authorized to hire private contractors to carry out studies and investigations on its behalf. § 4102(a). FEMA is expected to constantly reappraise the program and to expeditiously identify and disseminate information about flood-prone areas. *See* §§ 4001(e)(5), 4002(b)(2).

In creating and updating its flood maps, FEMA is first required to publish proposed flood elevation determinations for comment in the Federal Register and in a prominent local newspaper. 42 U.S.C. § 4104(a). Any property owner affected by a proposed determination who wants to challenge it is required to appeal to the local government during the 90-day period following publication. § 4104(b). A landowner can appeal on only one basis: that the proposed determination is "scientifically or technically incorrect." § 4104(b). The chief executive officer of the community is then required to determine whether the evidence is sufficient to justify an appeal on behalf of the community. § 4104(c). Even if the community does not appeal the determination, the Director of FEMA is required to review the appeals made by private persons. § 4104(d). The Director is required to modify his proposed determination "as may be appropriate" after considering any

scientific information presented and to publish a final determination. § 4104(d), (e).

After receiving notice of the Director's final determination, an appellant has 60 days to appeal that determination in federal district court. § 4104(g). Significantly, "the *sole relief* which shall be granted . . . is a modification of the Director's proposed determination." § 4104(b) (emphasis added).

Section 4104 is a product of the careful balancing of the interests of affected landowners and communities and the purposes of the NFIA. The legislative history of the appeals procedure describes Congress' effort "to provide an equitable balancing of all of the interests involved in the identification and the setting of construction elevation standards for flood-prone areas." S. Rep. No. 93-583 (1973), *reprinted in* 1973 U.S.C.C.A.N. 3217, 3230. *See Reardon v. Krimm*, 541 F. Supp. 187, 189 (D. Kan. 1982) ("The decision by Congress to adopt such a limited scope of appeal [under § 4104] was . . . not a hasty one, nor is it one which may be overlooked by the Court."). While accommodating landowners' concerns in the review process, Congress specifically recognized "the vested interests of many land developers and others in avoiding or deferring all limitations on flood plain development as long as possible." 1973 U.S.C.C.A.N. at 3232. This interest conflicts with the NFIP's "need for rapid implementation of the flood insurance program." 1973 U.S.C.C.A.N. at 3232. Therefore, Congress took into account the competing interests when it set forth the limited appeals process.

### B.

As the district court observed, state law causes of action against FEMA's independent contractors undermine the primary purposes of the NFIA to strike a balance between protecting property owners' right to appeal flood elevation determinations and the government's interest in minimizing the costs inherent in updating flood maps in order to provide

flood insurance. The cost of defending such claims against independent contractors in Dewberry's position will be transferred to FEMA through increased contract fees. *See Boyle v. United Tech. Corp.*, 487 U.S. 500, 507-508 (1988) (finding that the imposition of liability on government contractors will either raise the price of contracts or cause contractors to decline to contract). This would increase the financial burden on the Treasury and hinder FEMA's efforts to implement the flood insurance program, thus destroying the balance struck by Congress in promulgating the NFIA.

Additionally, permitting affected property owners to bring state law tort claims against independent contractors hired by FEMA would undermine the limited appeals process chosen by Congress to enable FEMA to constantly reappraise the program and to expeditiously identify and disseminate information about flood-prone areas. The appeals provision provides for a review process under which the *only* basis for challenging a proposed determination is evidence showing that the determination is scientifically or technically incorrect, § 4104(b), and the *only* available remedy is modification of the determination. § 4104(b).

By bringing this action against Dewberry, Columbia Venture seeks to circumvent the limits imposed under § 4104 in order to obtain monetary relief based on alleged scientific and technical errors made by Dewberry and relied on by FEMA in making its flood elevation determination. As noted above, Columbia Venture lost its administrative appeal against FEMA pursuant to § 4104, and it now proceeds against Dewberry for another bite at the apple. Such litigation costs will certainly be passed on to FEMA, and litigation involving its flood elevation determinations will likely delay FEMA's identification and mapping of flood-prone areas. This result is precisely what Congress was trying to avoid when it enacted the limited appeals process of § 4104. We conclude that state law tort claims against FEMA's independent contractors would be an obstacle to the accomplishment of the primary

purposes of the NFIA and § 4104. Therefore, the district court properly concluded that Columbia Venture's claims are pre-empted.

## IV.

Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*